# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

2019 ND 74

---

City of Bismarck,                                    Plaintiff and Appellee

v.

Paul King,                                    Defendant and Appellant

---

No. 20180138

---

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Gail Hagerty, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Jason J. Hammes, Assistant City Attorney, Bismarck, ND, for plaintiff and appellee.

Chad R. McCabe, Bismarck, ND, for defendant and appellant.

## City of Bismarck v. King
## No. 20180138

**McEvers, Justice.**

[¶1]    Paul King appeals from a criminal judgment entered after a jury found him guilty of refusing to submit to chemical testing.  King argues the district court erred in denying his request to give his proposed jury instructions, failing to give him an opportunity to object to the jury instructions, and allowing testimony about a preliminary screening test.  We affirm.

I

[¶2]    On July 1, 2017, Bismarck Police Officer Joseph Olsen stopped King's vehicle.  Olsen testified he smelled the odor of alcohol coming from within the vehicle and King's eyes appeared to be red and glossy.  King performed various field sobriety tests and was subsequently arrested for driving under the influence.

[¶3]    Olsen informed King of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and he read the implied consent advisory to King.  King agreed to submit to a breath test and was transported to the Bismarck Police Department for testing.  At the police department, Olsen asked King if he would submit to the breath test and he said "no."  Olsen asked King if he refused, and King replied "yes."  King was charged with operating a motor vehicle under the influence of alcohol and/or refusing to submit to a chemical test under Bismarck City Ordinance § 12-10-01(1).

[¶4]    A jury trial was held.  Olsen requested the district court give a jury instruction about refusal of a chemical test and a second instruction about the right to refuse a chemical test.  The court refused to give Olsen's requested jury instructions, and a jury found him guilty of refusing to submit to a chemical breath test.

[¶5]    King argues the district court erred by failing to give either of his requested jury instructions. He contends his requested instructions accurately informed the jury of the law on issues that were raised.

[¶6]    Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *State v. Pavlicek*, 2012 ND 154, ¶ 14, 819 N.W.2d 521. Jury instructions are reviewed as a whole to determine whether they adequately and correctly inform the jury of the applicable law. *Id.* "The district court is not required to give instructions using the specific language the defendant requests, and may refuse to give a requested instruction if it is irrelevant or does not apply." *State v. Montplaisir*, 2015 ND 237, ¶ 29, 869 N.W.2d 435. The court errs if it refuses to instruct the jury on an issue that was adequately raised. *Pavlicek*, at ¶ 14. "A defendant is entitled to a jury instruction on a defense if there is evidence to support it and it creates a reasonable doubt about an element of the charged offense." *State v. Samshal*, 2013 ND 188, ¶ 14, 838 N.W.2d 463. The evidence is viewed in the light most favorable to the defendant to determine whether there is sufficient evidence to support a requested instruction. *Id.*

A

[¶7]    King's first requested jury instruction was about refusal of a chemical test. The proposed instruction stated:

> Withdrawing the implied consent requires an affirmative refusal to be tested. Refusal requires a conscious decision, and the statutory scheme requires communication between the law enforcement officer and the driver in which the officer requests submission to the test.
>
> The question of whether Paul King refused to take the test is a question of fact which is left solely for your determination. Moreover, whether Paul King was confused when he refused to take the test is also a question of fact which is left solely for your determination.

[¶8]   King claims the first paragraph of the requested instruction adequately informed the jury of the law because it directly quoted language from *Grosgebauer v. N.D. Dep't of Transp.*, 2008 ND 75, 747 N.W.2d 510.

[¶9]   This Court previously addressed a similar instruction in *State v. Keller*, 2016 ND 63, 876 N.W.2d 724.  The requested instruction in *Keller* stated:

> Withdrawing the implied consent requires an affirmative refusal to be tested.  Refusal requires a conscious decision, and the statutory scheme requires communication between the law enforcement officer and the driver in which the officer requests submission to the test.  Whether a driver affirmatively refused to submit to testing is a question of fact which is left solely for your determination.
>
> When the law enforcement officer fails to advise the driver of the criminal sanctions for refusal of a chemical test, a refusal to take the test under these conditions is not the affirmative refusal necessary.

*Id.* at ¶ 6.  The defendant in *Keller* also argued this Court's decision in *Grosgebauer*, 2008 ND 75, 747 N.W.2d 510, supported her requested instruction.  *Keller*, at ¶ 7.  We rejected that argument in *Keller* and held the instruction was inaccurate because it required the jury to find affirmative refusal in the form of communication between the driver and the officer, which is not required by law.  *Id.* at ¶¶ 7-8.  We explained that refusal does not have to be explicitly stated and that "stubborn silence" or "physical failure to cooperate" may also indicate refusal.  *Id.* at ¶ 6.

[¶10]   The first paragraph and first sentence of the second paragraph of King's requested instruction is almost identical to the language used in the instruction in *Keller*.  King's requested instruction also required the jury to find affirmative refusal in the form of communication between the driver and officer.  As we said in *Keller*, that is not required by law and the instruction is not accurate.  The district court did not err by refusing to give King's requested instruction.

B

[¶11]   King argues the second paragraph of the first requested instruction should have been given even if the whole requested instruction was not given because it was

3

imperative the jury be instructed that the issue of whether King was confused when he refused to take the chemical test was a question of fact. King relies on this Court's decision in *Obrigewitch v. Dir., N.D. Dep't of Transp.*, 2002 ND 177, 653 N.W.2d 73, to support his claim that the jury must consider whether the driver was confused when he refused to submit to testing. King claims there was evidence he was confused when he refused to take the breath test and the jury would have acquitted him if they found he was confused. King's argument assumes a defendant's confusion is a defense to a criminal refusal charge.

[¶12] In *Obrigewitch*, 2002 ND 177, ¶ 14, 653 N.W.2d 73, this Court said, "The question of whether Obrigewitch refused to take the test is a question of fact. *Hammeren v. N.D. State Highway Comm'n*, 315 N.W.2d 679, 682-83 (N.D. 1982). Whether Obrigewitch was confused when he refused to take the test is also a question of fact. *Id.* at 683." This Court previously discussed the "confusion doctrine" in greater detail in *Ehrlich v. Backes*, 477 N.W.2d 211, 212-13 (N.D. 1991). We said "The 'confusion doctrine' provides that when an arresting officer introduces the question of a drunken-driving suspect's right to counsel by giving a *Miranda* warning prior to requesting a chemical test, the suspect's subsequent refusal to take a test until an attorney is consulted may not constitute a 'refusal to submit' to a chemical test." *Id.* We further explained the confusion doctrine does not apply when the officer explicitly informs the driver that the *Miranda* rights do not apply to the taking of a chemical test pursuant to the implied consent law. *Id.* at 213.

[¶13] The important thread throughout our cases discussing confusion generally involves the driver's right to have the opportunity to consult with an attorney. *See Ehrlich*, 477 N.W.2d at 214 (discussing confusion doctrine in the context of *Miranda* warnings and holding that driver is only entitled to a reasonable opportunity to consult with an attorney); *Bickler v. N.D. State Highway Comm'r*, 423 N.W.2d 146, 147 (N.D. 1988) (discussing the limited nature of the right to consult with an attorney prior to taking a chemical test); *Kuntz v. State Highway Comm'r*, 405 N.W.2d 285, 290 (N.D. 1987) (holding that if an arrested person asks to consult with an attorney

4

before deciding to take the chemical test, he must be given a reasonable opportunity to do so if it does not materially interfere with the administration of the test); *Hammeren*, 315 N.W.2d at 682 (declining to adopt a "per se" confusion rule for failure of an officer to inform a driver following a *Miranda* warning that his license will be suspended if he refuses to submit to a test); *Agnew v. Hjelle*, 216 N.W.2d 291, 297 (N.D. 1974) (discussing "so-called 'confusion doctrine'" having been applied under limited circumstances in California when the driver refuses to take a test because he was confused by *Miranda* warnings).

[¶14] As Justice Levine further explained in her concurrence in *Ehrlich*, 477 N.W.2d at 215:

> The importance of the opportunity to consult with counsel is to mitigate the confusion that inheres in the situation where there is a *Miranda* assurance of a right to counsel followed by a denial of access to an attorney to advise whether to take the test.
>
> Under *Kuntz* and *Bickler*, any confusion that would justify a reversal of a license revocation, is obviated by the opportunity of an arrestee to consult with counsel before taking a chemical test.

(Justice Levine, concurring in result) (internal citations omitted). This Court also noted "we have never reversed a license revocation based on the 'confusion doctrine'" but we indicated the issue may be raised in license revocation proceedings. *Id.* at 212.

[¶15] This is a criminal prosecution and not an administrative license revocation proceeding. If King wanted to argue his limited right to consult with an attorney was violated, the appropriate place to raise the issue would not be before the jury, but in a pretrial motion. In *State v. Sadek*, 552 N.W.2d 71, 73 (N.D. 1996), the defendant moved at trial to have the results of his Intoxilyzer test suppressed, arguing he was denied the opportunity to consult with an attorney before he took the test. This Court stated in *Sadek*:

> Under Rule 12(b), N.D.R.Crim.P., "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." When an accused person seeks "to suppress evidence on the ground that it was illegally obtained," such a motion "must be raised prior to trial." Rule 12(b)(3), N.D.R.Crim.P. Failure to raise before trial a motion to suppress

evidence on the ground that it was illegally obtained operates as a waiver of the motion. *State v. Demery*, 331 N.W.2d 7, 13 (N.D. 1983); *State v. Schroeder*, 524 N.W.2d 837, 839 (N.D. 1994).

*Sadek*, at 73.

[¶16] King was charged with driving under the influence of alcohol or drugs and/or refusal to submit to a chemical test under Bismarck City Ordinance § 12-10-01(1). The relevant portions of the city ordinance use language identical to N.D.C.C. § 39-08-01(1). This Court has previously held driving under the influence of alcohol under N.D.C.C. § 39-08-01 is a strict liability offense and there is no culpability requirement. *See Montplaisir*, 2015 ND 237, ¶ 33, 869 N.W.2d 435; *State v. Glass*, 2000 ND 212, ¶ 21, 620 N.W.2d 146. A strict liability offense is punishable without regard to intent, knowledge, willfulness, or negligence. *State v. Olson*, 356 N.W.2d 110, 112 (N.D. 1984). Although we have not specifically addressed criminal refusal under N.D.C.C. § 39-08-01, the legislature did not amend the language of the statute to require some level of culpability when it added the language making refusal a criminal offense in 2013. *See* 2013 N.D. Sess. Laws ch. 301, § 7. Nothing in the plain language of N.D.C.C. § 39-08-01 indicates an intent to alter our decisions that driving under the influence, including refusal, is a strict liability offense. *See also Hearing on H.B. 1302 Before the House Judiciary Comm.*, 63rd N.D. Legis. Sess. (April 16, 2013) (testimony from Senator Kelly Armstrong) (stating "A refusal to submit to chemical testing is a crime just like a DUI. . . . We added it into 39-08-01 and made it a strict liability crime under the DUI statute."). A person is guilty of refusal to submit to a chemical test if he drives or is in actual physical control of a vehicle and he refuses to submit to a chemical test at the direction of a law enforcement officer.

[¶17] King's alleged confusion as a reason why he refused to submit to testing was not relevant. This Court has recognized limited affirmative defenses to strict liability crimes when public policy supports the defense or the constitutional interests of the accused are concerned. *See State v. Vandermeer*, 2014 ND 46, ¶ 18, 843 N.W.2d 686. However, no such arguments were made in this case.

[¶18]   Because refusal to submit to chemical testing under Bismarck City Ordinance § 12-10-01 is a strict liability offense, King was not entitled to a jury instruction on confusion.   The district court did not err by refusing to give King's requested instruction.

C

[¶19]   King also requested a second instruction about the right to refuse chemical testing.  The proposed instruction stated:

> A driver has a conditional right to refuse a chemical test.  The fact that North Dakota drivers are able to refuse testing is a matter of legislative grace.  Refusing to submit to the test is a legislatively granted privilege and the legislature is able to limit the extent of that privilege.

[¶20]   King argues the district court erred by failing to give his second requested instruction.  He contends the language of the instruction came directly from *State v. Murphy*, 527 N.W.2d 254, 256 (ND 1995), and *State v. Murphy*, 516 N.W.2d 285, 287 (ND 1994).   King contends the instruction would have provided further background about the refusal law.

[¶21]   The proposed instruction would have informed the jury that a driver has a conditional right to refuse a chemical test, the ability to refuse is a matter of legislative grace, and it is a legislatively granted privilege, which the legislature is able to limit.  However, the proposed instruction did not inform the jury that the state may attach penalties to a driver's refusal, including criminal penalties.  *See Murphy*, 527 N.W.2d at 256.  The instruction was incomplete and did not adequately state the law.  The district court did not err in refusing to give the requested instruction.

III

[¶22]   King argues he was not given an opportunity to object on the record to the district court's jury instructions.

[¶23]   Under N.D.R.Crim.P. 30(b)(1), the district court is required to inform the parties of its proposed instructions and its proposed action on the requested

instructions before instructing the jury and before final jury argument. The court is also required to give the parties an opportunity to object on the record to the proposed instructions and to the court's actions on requested instructions before the instructions and final arguments are delivered. *Id.*

[¶24] The record reflects the district court gave the parties its proposed jury instructions before the trial started and the court informed King why it was not going to give his requested instructions. King was given an opportunity to object to the instructions at that time and he objected to the court's decision not to give his first proposed instruction. The court reaffirmed it was not going to give the requested instructions. After the close of evidence, the court gave King an opportunity out of the presence of the jury to make motions and to preserve the record before the final instructions were given. King objected to the court's failure to give his first proposed instruction.

[¶25] King admits he objected to the district court's failure to give his proposed instructions, but he contends the court never asked him if he had any objections to the court's instructions. We conclude King had an opportunity to object to the court's jury instructions.

IV

[¶26] King argues the district court erred in overruling his objection to testimony about a preliminary screening test. He contends the court erred by allowing Olsen to testify that part of the implied consent advisory he read to King included language that, "If you have refused the prior screening test, you may cure that refusal by completing this additional chemical test." King asserts this Court has said whether a driver consented to take a preliminary breath test is irrelevant and inadmissible, there was no evidence he refused a preliminary screening test, there was no need to tell the jury about a screening test, and the testimony was unnecessary and confusing to the jury.

8

[¶27]   The district court has broad discretion in deciding whether to admit or exclude evidence, and we will not reverse a district court's decision unless the court abused its discretion.  *State v. Hunter*, 2018 ND 173, ¶ 36, 914 N.W.2d 527.  The district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.  *Id.*

[¶28]   Under N.D.C.C. § 39-20-14(3), the results of a screening test may only be used to determine whether further testing shall be given, but a refusal to submit to a screening test may be admissible in a court proceeding.  This Court has held testimony about a defendant's preliminary breath test results or whether the defendant consented to take a preliminary breath test are irrelevant and inadmissible when probable cause for the defendant's arrest is not at issue at trial.  *City of Fargo v. Erickson*, 1999 ND 145, ¶¶ 10-12, 598 N.W.2d 787.  Recently in *State v. Rende*, 2018 ND 33, ¶ 1, 905 N.W.2d 909, this Court held the disclosure of the results of the preliminary breath test was not harmless error and required the granting of the motion for a mistrial.

[¶29]   The testimony King alleges was improper came during the City's questioning of Olsen.  Olsen was asked whether he read the implied consent advisory to King after he was arrested for driving under the influence.  Olsen testified that he read the advisory from a card and that language provided:

> You are under arrest for violation of 39-08-01, driving under the influence of alcohol or drugs.  North Dakota law also requires you to submit to an additional chemical test to determine whether you're under the influence of alcohol or drugs.  I must again inform you that refusal to take this requested test may result in revocation of your driver's license for a minimum of 180 days and potentially up to three years, and refusal to take this test is a crime punishable in the same manner as a DUI.  If you have refused the prior screening test, you may cure that refusal by completing this additional chemical test.

King objected to the testimony about the screening test, arguing it was prohibited. The district court overruled the objection, explaining that Olsen was required to read

9

the advisory to King and that the objection was the only thing that would draw the jury's attention to the reference to a screening test.

[¶30]  The only mention of a screening test was in Olsen's testimony that he read King the implied consent advisory after King's arrest and the language King objected to was included in the advisory.  The language in the advisory was not specific to King.  There was no other testimony mentioning a screening test.  Olsen did not testify about the results of a screening test or testify about whether King took a screening test.  Under the circumstances of this case, the district court did not abuse its discretion in overruling King's objection and allowing admission of Olsen's testimony about the language of the implied consent advisory.

V

[¶31]  We affirm the criminal judgment.

[¶32]  Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Gerald W. VandeWalle, C.J.

10