# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2019 ND 287

Corey Joseph Jesser,                                                                 Appellee

      v.

North Dakota Department of Transportation,                          Appellant

## No. 20190101

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia Feland, Judge.

REVERSED.

Opinion of the Court by Crothers, Justice, in which Chief Justice VandeWalle and Justices McEvers, Tufte, and Jensen joined. Justice Tufte filed an opinion concurring specially in which Jensen joined. Chief Justice VandeWalle filed an opinion concurring in the result.

Chad R. McCabe, Bismarck, ND, for appellee.

Michael T. Pitcher, Attorney General's Office, Bismarck, ND, for appellant.

**Jesser v. N.D. Dep't of Transportation**

**No. 20190101**

**Crothers, Justice.**

[¶1] The North Dakota Department of Transportation appeals from a judgment reversing the decision of an administrative hearing officer revoking Corey Joseph Jesser's driving privileges for 180 days. We reverse the district court judgment and reinstate the administrative hearing officer's decision revoking Jesser's license.

I

[¶2] On June 17, 2018, law enforcement dispatch received multiple calls about a hit and run accident involving a black SUV. Dispatch advised Morton County Deputy Peterson that one caller heard what sounded like a moving car dragging vehicle parts. Peterson responded and saw a trail of fluid near the accident site which led around the block to the described vehicle.

[¶3] Jesser was standing outside the vehicle on the sidewalk near the passenger side. The vehicle had noticeable front-end and passenger-side damage. Peterson administered field sobriety tests and advised Jesser of the implied consent advisory for an onsite screening test and asked Jesser to submit to the test. Jesser refused to take the test and was arrested for driving under the influence. Peterson gave Jesser the post-arrest implied consent advisory and asked Jesser if he would submit to a chemical breath test. After Jesser hesitated answering, Peterson asked Jesser if he would like to call an attorney. Jesser stated he would, but he did not know who to call.

[¶4] Peterson escorted Jesser to the Burleigh Morton Detention Center and asked the jailers for a telephone and telephone book. Peterson advised Jesser he would get access to a telephone and telephone book. Jesser responded stating, "I don't know who to call." Jesser did not receive a telephone and telephone book, nor did he again mention speaking to an attorney. He did not submit to the chemical breath test.

[¶5] A Report and Notice was issued to Jesser. It notified him of the Department's intent to revoke his driving privileges. Jesser requested a hearing. The hearing officer found Peterson had reason to believe Jesser was involved in a traffic accident as the driver, Jesser's body contained alcohol, and he refused to submit to the onsite screening test. The hearing officer found Peterson had reasonable grounds to believe Jesser was driving or in actual physical control of a vehicle while under the influence of intoxicating liquor. The hearing officer found Jesser was arrested and refused to submit to the chemical breath test. The hearing officer found the limited statutory right to an attorney was not violated. Jesser's license was revoked for 180 days based on his refusal of the onsite screening test and chemical test. Jesser appealed and the district court reversed. The Department appeals.

II

[¶6] "The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs our review of an administrative decision suspending or revoking a driver's license." *Crawford v. Director, N.D. Dep't of Transp.*, 2017 ND 103, ¶ 3, 893 N.W.2d 770. Under N.D.C.C. § 28-32-49, we review an appeal from a district court judgment in an administrative appeal in the same manner as provided under N.D.C.C. § 28-32-46, which requires a district court to affirm an agency order unless it finds any of the following:

> "1. The order is not in accordance with the law.
> 2. The order is in violation of the constitutional rights of the appellant.
> 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
> 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
> 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
> 6. The conclusions of law and order of the agency are not supported by its findings of fact.
> 7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28-32-46.

III

[¶7] The Department argues the district court erred by reversing the administrative hearing officer's decision because the Department had authority to revoke Jesser's license under N.D.C.C. § 39-20-14 for refusal to take the onsite screening test. Jesser responds that the district court properly reversed the Department's revocation because he requested and was denied the opportunity to speak to counsel. Jesser also argues the holding in *Kuntz* that the "failure to take the test is not a refusal upon which to revoke his license under Chapter 39-20, N.D.C.C." should be extended to a person's ability to cure refusal of the onsite screening test. *Kuntz v. State Highway Comm'r*, 405 N.W.2d 285, 290 (N.D. 1987). We conclude the last issue is dispositive because, even if Jesser's limited right to counsel was violated after his arrest, he had no right to counsel prior to arrest when he refused to take the onsite screening test.

[¶8] Section 39-20-04, N.D.C.C., authorizes revocation of driving privileges upon refusal to submit to a test under section 39-20-01 or 39-20-14. *Roberts v. North Dakota Dept. of Transp.*, 2015 ND 137, ¶ 6, 863 N.W.2d 529. Section 39-20-01, N.D.C.C., states[1]:

"1. Any individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, or urine for the purpose of determining the alcohol concentration or presence of other

[1] Both N.D.C.C. § 39-20-01 and § 39-20-14 were modified in the 2019 Legislative session. We are applying the statutes as they existed when Jesser was charged.

4

drugs, or combination thereof, in the individual's blood, breath, or urine. . . .

2. The test or tests must be administered at the direction of a law enforcement officer only after placing the individual . . . under arrest and informing that individual that the individual is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof."

[¶9] Section 39-20-14, N.D.C.C., states:

"1. Any individual who operates a motor vehicle upon the public highways of this state is deemed to have given consent to submit to an onsite screening test or tests of the individual's breath for the purpose of estimating the alcohol concentration in the individual's breath upon the request of a law enforcement officer who has reason to believe that the individual committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the individual's body contains alcohol."

[¶10] "[R]efusal of the screening test can be cured by consenting to take the chemical test after arrest." *City of Mandan v. Leno*, 2000 ND 184, ¶ 15, 618 N.W.2d 161; N.D.C.C. § 39-20-14. Section 39-20-14(4), N.D.C.C., states, "the director must not revoke an individual's driving privileges for refusing to submit to a screening test requested under this section if the individual provides a sufficient breath, blood, or urine sample for a chemical test requested under section 39-20-01 for the same incident."

[¶11] Jesser did not take the chemical test after he was arrested. Therefore, he did not cure his prior refusal as outlined in N.D.C.C. § 39-20-14.

IV

[¶12] Jesser argues if the statutory opportunity to consult with an attorney before deciding whether to submit to a chemical test has been deprived, then the statutory opportunity to cure the refusal of the onsite screening test also has been deprived. The Department argues the *Kuntz* principle has not been

5

and should not be extended to a person's ability to cure the refusal of the onsite screening test. We agree with the Department.

[¶13] Whether the statutory right to counsel before chemical testing under N.D.C.C. § 39-20-01 impacts the right to cure under N.D.C.C. § 39-20-14 is a question of first impression for this Court. We review this legal question de novo. *State v. Gasal*, 2015 ND 43, ¶ 6, 859 N.W.2d 914.

[¶14] In *Kuntz v. State Highway Comm'r*, Kuntz was arrested after field sobriety tests. No onsite screening test was administered. 405 N.W.2d 285, 286 (N.D. 1987). The arresting deputy asked Kuntz to take a chemical breath test and informed him refusal of the test would result in a revocation of his driver's license. *Id*. This Court held "if an arrested person asks to consult with an attorney before deciding to take a chemical test, he must be given a reasonable opportunity to do so if it does not materially interfere with the administration of the test. If he is not given a reasonable opportunity to do so under the circumstances, his failure to take the test is not a refusal upon which to revoke his license under Chapter 39-20, N.D.C.C." *Id*. at 290.

[¶15] We have applied *Kuntz* to N.D.C.C. § 39-20-01. *See generally In re R.P.*, 2008 ND 39, 745 N.W.2d 642; *Evans v. Backes*, 437 N.W.2d 848 (N.D. 1989). *Kuntz* only considered refusal of a test after an arrest and did not consider failure to take the onsite screening test. However, we have not expanded the ability to cure a refusal based on the deprivation to consult with an attorney as outlined in *Kuntz* and we decline to extend *Kuntz* to N.D.C.C. § 39-20-14.

[¶16] The limited statutory right of a defendant to consult with an attorney before taking a chemical test attaches only after arrest. N.D.C.C. § 29-05-20; *City of Mandan v. Leno*, 2000 ND 184, ¶ 1, 618 N.W.2d. We reject the argument that a post-arrest limited statutory right to counsel creates a pre-arrest right because an individual is deprived of a post-arrest remedy. We decline to extend to the revocation of an individual's license under N.D.C.C. § 39-20-14.

[¶17] The holding in *Kuntz* is not extended to N.D.C.C. § 39-20-14. Because Jesser did not properly cure his refusal under N.D.C.C. § 39-20-14, his license was lawfully revoked under that section. We reverse the district court's judgment and reinstate the hearing officer's decision revoking Jesser's driving privileges for 180 days.

[¶18]   Daniel J. Crothers
       Lisa Fair McEvers
       Jon J. Jensen

**Tufte, Justice, concurring specially.**

[¶19] I agree with the majority that we should not extend the right announced in *Kuntz v. State Highway Comm'r*, 405 N.W.2d 285 (N.D. 1987), to the situation presented here.

[¶20] The statutory right to counsel relied on by *Kuntz* derives from the 1877 Dakota Territory Code of Criminal Procedure. *Kuntz*, 405 N.W.2d at 290 (Erickstad, C.J., dissenting). *Kuntz* quoted section 29-05-20 as follows:

> Delay after arrest prohibited—Attorney.—The accused in all cases must be taken before a magistrate without unnecessary delay, and

> any attorney at law entitled to practice in the courts of record of this state, at his request, may visit such person after his arrest.

The term "his request" appears ambiguous as to whether it refers to a request by the accused or by an attorney at law. The last antecedent rule would suggest that "his request" refers to a request by the "attorney at law" and that "his arrest" refers to "such person" who is visited. But the close proximity of "his request" and "his arrest" suggests the possibility that "his" refers to the same referent in both clauses, which is apparently how the *Kuntz* majority read it: "We conclude that Kuntz was not allowed a reasonable opportunity to do so, at his request, and that, therefore, his failure to take the test was not a refusal." *Id.* at 285-86. In footnote 1 of his dissent, then Justice VandeWalle pointed out the majority's failure to engage with the Highway Commissioner's argument that the statute provided a right to the attorney to visit the person arrested:

> The majority opinion does not discuss the argument made by counsel for the Commissioner that Section 29-05-20 which states that "any attorney at law entitled to practice in the courts of record of this state, at *his* request, may visit *such* person after *his* arrest" gives the attorney the right to visit the person arrested, not the person arrested the right to have counsel visit him. Although I believe the statute is grammatically susceptible of such a construction, I prefer the one placed upon it by the majority opinion.

[¶21] The section now reads:

> The accused in all cases must be taken before a magistrate without unnecessary delay, and any attorney at law entitled to practice in the courts of record of this state, at the attorney's request, may visit such person after that person's arrest.

N.D.C.C. § 29-05-20. Both instances of the word "his" have been replaced to remove ambiguity. Where it once referred to a visit at "his request" it now refers to "the attorney's request." This amendment is directly contrary to the interpretation given by the majority in *Kuntz*. Despite this amendment our cases have continued to cite *Kuntz* for the right of an arrested driver to consult counsel prior to a chemical test.

[¶22] I have grave doubts that after this amendment the statute should still be interpreted to provide a right to consult with an attorney after arrest but before being taken before a magistrate or even to a jail. I am also skeptical that immediately upon arrest any accused person has a right to a phone and a phone book to find and consult an attorney. I see nothing that would limit a right to counsel under Section 29-05-20 to DUI cases or decisions whether to waive Fourth Amendment rights by submitting to a chemical test. But *Kuntz* adopted that interpretation, and numerous cases since then have relied on *Kuntz*'s holding that an arrestee has a statutory right to attorney consultation when deciding whether to submit to a chemical test. We do not lightly revisit settled issues of statutory interpretation because the Legislative Assembly has ample opportunity to correct our work if it does not comport with its intended meaning. *See* Brian A. Garner *The Law of Judicial Precedent* 333-35 (2016). Here, it appears the Legislative Assembly may have tried to correct our work, but without effect. Whatever additional force stare decisis may have in statutory interpretation cases, stare decisis does not weigh in favor of extending a dubious precedent to another application beyond the scope of the precedent's holding. With full briefing and argument in a future case, we may wish to reconsider whether *Kuntz* remains good law after the amendment to the statute.

[¶23] Jerod E. Tufte
      Jon J. Jensen

**VandeWalle, Chief Justice, concurring in the result.**

[¶24] I concur in the result. However, I do so from a stance different than that of the majority.

[¶25] We have construed the applicable statutes to encourage taking the screening and chemical tests rather than to discourage taking the tests. *See Krehlik v. Moore*, 542 N.W.2d 443, 445-47 (N.D. 1996) (discussing legislative intent relating to implied consent laws and legislature's intent to encourage drivers to take chemical test); *see also Alvarado v. N.D. Dep't of Transp.*, 2019 ND 231, ¶ 15, 932 N.W.2d 911 (VandeWalle, C.J., concurring specially).

[¶26] Thus, rather than viewing the issue as a right to counsel before taking a screening test, I view it from the perspective of the ability and right to cure a refusal under N.D.C.C. § 39-20-14(4) as outlined in ¶ 10 of the majority. That section provides:

> The director must not revoke an individual's driving privileges for refusing to submit to a screening test requested under this section if the individual provides a sufficient breath, blood, or urine sample for a chemical test requested under section 39-20-01 for the same incident.

Therefore, if the individual agrees to take a chemical test, it cures the prior refusal to take the screening test. I realize from the special writings of some of my colleagues' concern with this Court's decision in *Kuntz v. State Highway Comm'r*, 405 N.W.2d 285 (N.D. 1987). But, the statutory right to counsel before agreeing to take the chemical test has not been modified legislatively or judicially for over 22 years; it is that right to counsel Jesser contends was violated. Under *Kuntz*, if his right to counsel was violated relative to the chemical test it also interfered with his right to cure his refusal to take the screening test by taking the chemical test.

[¶27] However, I would nevertheless reverse the decision of the district court that Jesser was denied a reasonable opportunity to consult with an attorney before refusing to take the chemical test. "Whether a person has been afforded

10

a reasonable opportunity to consult with an attorney is a mixed question of law and fact." *Wetzel v. N.D. Dep't of Transp.*, 2001 ND 35, ¶ 10, 622 N.W.2d 180. This Court "review[s] mixed questions of law and fact under the de novo standard of review." *Herrman v. Dir., N.D. Dep't of Transp.*, 2014 ND 129, ¶ 14, 847 N.W.2d 768. Deference is given to the Department's findings. *Eriksmoen v. Dir., N.D. Dep't of Transp.*, 2005 ND 206, ¶¶ 7, 13, 706 N.W.2d 610. Once the facts are established, their significance presents a question of law, which we review de novo. *Schoon v. N.D. Dep't of Transp.*, 2018 ND 210, ¶ 7, 917 N.W.2d 199.

[¶28] The hearing officer found:

> Deputy Peterson informed Mr. Jesser of the post-arrest implied consent advisory for a chemical test. Deputy Peterson asked Mr. Jesser to submit to a chemical breath test. Deputy Peterson asked Mr. Jesser if Mr. Jesser would like to speak to an attorney. Mr. Jesser stated he would but that he did not know who to call. Deputy Peterson told Mr. Jesser he would have access to a telephone and a phone book. Mr. Jesser again stated he would not know who to call.

[¶29] I believe offering Jesser a telephone and a telephone book provides a reasonable opportunity to consult with an attorney. The fact Jesser did not know who to call does not require the officer to do more. Requiring the officer to do more sets on the path of guaranteeing access to a competent lawyer or at the least requiring the officer to maintain a list of available lawyers, a step we have not heretofore taken and one I believe we should not take.

[¶30] Gerald W. VandeWalle, C.J.